UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| ESTATE OF NICHOLAS D. RICE, | ) | |
|---|---|---|
| Plaintiff | ) | |
| vs. | ) | CAUSE NO. 3:09-CV-319 RLM |
| CORRECTIONAL MEDICAL SERVICES, *et al.*, | ) | |
| Defendants | ) | |

OPINION and ORDER

Nicholas Rice died while he was an inmate in the Elkhart County Jail. This suit ensued. Having once been to the court of appeals, the case is now before the court on a post-remand summary judgment motion by defendants Correctional Medical Services, Rebecca Hess, Sharrone Jones, Cindy Lambright, Joy Bell, and Florence Makousky. The court heard argument on the motion in March and, for the reasons that follow, the court grants the defendants' motion.

I.

The court of appeals thoroughly recited the operative facts of the case. Estate of Rice ex rel. Rice v. Correctional Med. Svcs., 650, 655-663 (7th Cir. 2012). For today's purposes, it is enough to highlight that Mr. Rice, who was schizophrenic, spent fifteen months in the county jail before he died. Mr. Rice's estate brought federal and state law claims against a score of defendants, including county and jail officials and health care providers. In 2009, this court

granted summary judgment for these CMS defendants (Correctional Medical Services and its employees, with whom Elkhart contracted to provide nursing services to jail inmates) on the Estate's federal deliberate indifference claims, explaining:

> . . . it wasn't reasonably foreseeable that Mr. Rice would suffer from cardiac arrhythmia due to hyponatremia arising from Mr. Rice's ingestion of excessive amounts of water over a short period of time. The defendants were aware of the serious medical needs posed by schizophrenia (though not every occasional result of schizophrenia) and starvation, and they took measures to address those needs.

Estate of Rice ex rel Rice v. Correctional Med. Servs., No. 3:06cv697, 2009 WL 1748059, at *26 (N.D. Ind. June 17, 2009). With the federal claims resolved, this court dismissed the supplemental state law claims against the CMS defendants. Id. at 27-28.

The Estate responded by appealing that ruling, and also by filing a new complaint against the CMS defendants (the original non-diverse defendant wasn't included in this suit), alleging medical malpractice claim under Indiana law. In 2010, a different judge of this court dismissed the new suit as barred by collateral estoppel, reasoning that the 2009 summary judgment decision had decided the issue of foreseeability. The Estate appealed that decision as well, and the court of appeals consolidated the cases.

The court of appeals affirmed the 2009 summary judgment with respect to all of the federal claims based on alleged deliberate indifference to Mr. Rice's serious medical needs, but reversed and remanded with respect to the Estate's

2

conditions-of-confinement claim. 675 F.3d at 663-688. The court of appeals also reversed the 2010 dismissal of the second suit because the 2009 comment on foreseeability wasn't necessary to resolution of the issues decided in the 2009 summary judgment ruling.

The consolidated cases returned to this court. The CMS defendants moved for summary judgment, arguing that: the Ind. Code § 34-9-3-4 bars the Estate from pursuing an alternative claim for survivorship; there is too little evidence to allow a reasonable trier of fact to find that Mr. Rice's death was reasonably foreseeable to the CMS nurses, or to find that the nurses' conduct or inactions proximately caused Mr. Rice's death; and that any claim for damages should be limited to the state's $300,000 wrongful death cap, Ind. Code § 34-23-1-2(e), and be offset by amounts the Estate recovered from other sources.

II.

Summary judgment is proper when — and only when — the record before the court shows that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); <u>Protective Life Ins. Co. v. Hansen</u>, 632 F.3d 388, 391-92 (7th Cir. 2011). The evidence and all reasonable inferences the evidence supports must be viewed in the light most favorable to the motion's opponent. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). The movant must inform the court of the basis for the motion and identify evidence demonstrating the absence of a genuine issue of material fact.

3

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets that motion, the opponent must set forth specific facts showing that a genuine issue of fact needs to be tried. Anderson v. Liberty Lobby, 477 U.S. at 248.

III.

A.

The defendants contend that:

- the Estate's only post-remand claim against them is a statutory wrongful death claim under Indiana law, Ind. Code § 34-23-1;

- the complaint doesn't sufficiently allege a survivorship claim under Ind. Code § 34-9-3-4;

- the Estate waived any argument to the contrary by not raising it on appeal, citing United States v. Husband, 312 F.3d 247, 250-251 (7th Cir. 2002), and Barrow v. Falck, 11 F.3d 729, 730 (7th Cir. 1993); and

- Indiana doesn't allow punitive damages for wrongful death, Ind. Code 34-23-1-2(c)(2)(B).

The Estate responds that:

- the complaint sufficiently pleads claims for both wrongful death and survivorship;

- earlier findings to the contrary can't give rise to a waiver because they were *dicta*; and

4

- the Estate is entitled to pursue alternate, though inconsistent, theories through trial, citing Ind. Tr. R. 8(E)(2), Calhoun v. Cummings, 734 N.E.2d 535, 543 (Ind. 2000), and Smith v. Johnston, 854 N.E.2d 388 (Ind. Ct. App. 2006). The Estate concedes that it can't recover damages on both of its purported claims, *see* Nadolski v. Hunnicut, No. 2:07cv164, 2009 WL 1659907 at *16 (N.D. Ind. June 15, 2009), but says jury instructions will avoid undue prejudice to the defendants.

B.

The nature of the claim or claims would have been a critical point in the briefing leading to the 2010 dismissal. If the defendants are right that the second complaint includes claims for both a survivorship claim and a wrongful death claim, lack of foreseeability would have been fatal to the wrongful death claim but not to the survivorship. The Estate didn't raise such an argument in the proceedings leading to (or the appeal of) the 2010 dismissal. Ordinarily, if a party bypasses an argument and doesn't present it to the court of appeals, the party can't resurrect the argument on remand. Barrow v. Falck, 11 F.3d 729, 730 (7th Cir. 1993).

More fundamentally, the complaint simply doesn't include a survivorship claim. The complaint says the claim is "common law medical malpractice," and mentions neither survivorship or the survivorship statute. The complaint seeks

5

compensatory and punitive damages for pain and suffering Mr. Rice is said to have suffered by the defendants' intentional actions and omissions, it also alleges that he died from those actions and omissions. The statutory survivorship claim exists only when the decedent died from causes other than those for which damages are sought. Ind. Code § 34-9-3-4. The Estate is correct that parties can plead inconsistent claims, *see* Fed. R. Civ. P. 8(d), but this complaint contains allegations that defeat a survivorship claim, and contains no allegations that suggest a survivorship claim.

The Estate's complaint alleges a state wrongful death claim, and no other.

C.

For its wrongful death claim to survive this summary judgment motion, the Estate must point to evidence that would allow a reasonable trier of fact to find that the defendants owed Mr. Rice a duty, that the defendants breached that duty, and that the breach proximately caused Mr. Rice's death. <u>Greathouse v. Armstrong</u>, 616 N.E.2d 364, 368 (Ind. 1993); <u>Tom v. Voida</u>, 654 N.E.2d 776, 787 (Ind. App. 1995). Today's inquiry turns on breach of duty and probable cause.

Nobody disputes, at least for summary judgment purposes, that Mr. Rice died from psychogenic polydipsia — excessive fluid consumption resulting from a personality disorder. Stedman's Medical Dictionary 1534 (28th ed. 2006). The ultimate objective inquiries at trial will be whether any breach of duty by the defendants caused Mr. Rice's death as a result of psychogenic polydipsia, and

6

whether that condition was reasonably foreseeable to the defendants, *see* Rice ex rel. Rice v. Correctional Medical Sevices, 675 F.3d 650, 689 (7th Cir. 2012); Knight v. Wiseman, 590 F.3d 458, 463 (7th Cir. 2009); Johnson v. Jacobs, 970 N.E.2d 666, 673 (Ind. App. 2011) (affirming grant of summary judgment and holding that no proximate cause existed because the injury was not "a natural, probably, and foreseeable consequence of the [defendants'] purported violation of a duty"); Merchants Nat'l Bank v. Simrell's Sports Bar & Grill, Inc., 741 N.E.2d 383, 389 (Ind. App. 2000), and so today's inquiry is whether a reasonable trier of fact could, by drawing all reasonable inferences in the Estate's favor, find that it was a foreseeable result of the defendants' acts and omissions.

The defendants say this record couldn't support such findings. Indiana law generally requires expert testimony as proof of causation in medical malpractice cases. *See* Clarian Health Partners, Inc. v. Wagler, 925 N.E.2d 388, 392 (Ind. App. 2010). That requirement applies in this diversity suit because it is substantive rather than procedural. Wallace v. McGlothan, 606 F.3d 410, 419 (7th Cir. 2010). The defendants say the Estate's own expert, Dr. Joe Goldenson, testified that there was nothing the nurses did or didn't do from a medical standpoint that directly caused Mr. Rice's death, and that the Estate hasn't pointed to anything contrary to that. The Estate submitted nearly ninety exhibits in response. It contends that genuine issues exist as to whether the CMS defendants provided negligent medical care and treatment, and that expert testimony isn't needed to prove causation because the breach of duty was obvious.

7

To prevail, the Estate must point to evidence that would allow a trier of fact to find that Mr. Rice's death was "a natural, probable, and foreseeable consequence" of the defendants' acts or omissions. Johnson v. Jacobs, 970 N.E.2d at 673; Merchants Nat'l Bank v. Simrell's Sports Bar & Grill, Inc., 741 N.E.2d at 389; Havert v. Caldwell, 452 N.E.2d 154, 158 (Ind. 1983). Expert evidence is necessary to prove an Indiana medical malpractice case that involves permanent injury or the aggravation of a previous injury unless the breach of the standard of care was obvious. Gipson v. United States, 631 F.3d 448, (7th Cir. 2011); Wallace v. McGlothan, 606 F.3d 410, 419-420 (7th Cir. 2010); Daub v. Daub, 629 N.E.2d 873, 877 (Ind. App. 1994) ("When the issue of cause in not within the understanding of a lay person, testimony of an expert witness on the issue is necessary.").

As proof that the defendants' breach of duty was obvious, the Estate submitted affidavits of other inmates who were at the jail while Mr. Rice was there. They say "it was obvious" Mr. Rice was "nuts", "very sick mentally", "very ill", "seriously sick", and "needed hospitalization" or "medical help"; that "it was only a matter of time until he died", and that efforts to summon help by "mule kicking" the cell doors as Mr. Rice died were unavailing. (Exhs. 34, 51, 53, and 59). The defendants don't disagree that Mr. Rice suffered from a mental disorder. They contend that death by psychogenic polydipsia wasn't obvious or foreseeable.

The Estate points to the following as evidence that the defendants breached their duty to Mr. Rice, and by doing so foreseeably caused or contributed to his death:

- Defendant Florence Makousky saw Mr. Rice many times and knew he was "mentally ill". (Exhs. 9 and 10).

- In September 2003, CMS employee Margaret Miller (not a defendant in this suit) noted that Mr. Rice "shows clear visible signs of psychotic breack" and recommended that he be examined by Dr. Roher as soon as possible. (Exhs. 11-15).

- In October 2013, Dr. Roher told CMS and its medical staff to track whether Mr. Rice was eating. (Exh. 7).

- Defendant Joy Bell noted in October 2003 that Mr. Rice was standing in the middle of his cell, avoiding eye contact, refusing to talk or to take medication. She assessed "ineffective coping" and "reminded inmate that acting like this won't get him out of jail like before." (Exh. 9; Exh. 16).

- Defendants Bell and Cindy Lambright were present when Mr. Rice was pepper sprayed in November 2003 and placed in a restraint chair for more than eighteen hours following an altercation; they didn't shower him or ask that he be removed from the restraints (Exhs. 20-24), violating the jail's "Use of Force" and "Emergency Restraint Chair" policies (Exhs. 25-26).

9

- In February 2004, Ms. Lambright noted that Mr. Rice "won't take meds or wear his clothes." (Exh. 9; Exh. 24; Exh. 27).

- In April 2004, Ms. Lambright noted that Mr. Rice couldn't stand, was jaundiced, refused to talk, and dead skin "sloughed off" when officers picked him up. (Exh. 9; Exh. 24).

- Ms. Bell noted in May 2004 that Mr. Rice had a three-inch bedsore. (Exh. 9).

- CMS didn't comply with Elkhart County Sheriff General Order 50701 (Exh. 39) or its Policy and Procedural Manual-Suicide Prevention Program (Exh. 40-41) when Mr. Rice cut his neck with a disposable razor in August 2004. (Exhs. 9, 15-16, 24, 29, 31, 37-38).

- The "medical staff" violated the jail's "Use of Force Policy" by restraining Mr. Rice in a restraint chair for eighteen hours in August 2004. (Exhs. 9, 25-26).

- Ms. Lambright noted that labs were needed after Mr. Rice fainted and cut his head in August 2004, but an order was never issued. (Exhs. 9, 24).

- Defendants Sharrone Jones and Rebecca Hess allowed Elkhart General Hospital to discharge Mr. Rice in October 2003, after Oaklawn refused the hospital's request to admit him for psychiatric intervention. (Exhs. 7, 18, 31, 41, and 47-50).

- There's no record of any contact between Mr. Rice and CMS for a nineteen-day period in October 2004. (Exh. 31).
- Ms. Jones gave Mr. Rice a bandage after a head injury in November 2004 (Exhs. 9 and 79(G)).
- Inmate Montie George warned Ms. Jones and Ms. Miller that Mr. Rice was "nuts" and couldn't care for himself. (Exh. 34).
- Although inmates were kicking the cell doors to summon help the night/morning Mr. Rice died (Exhs. 53 and 59), the shift logs from December 17-18, 2004 show no contact between Ms. Lambright (the nurse on duty at the time) and Mr. Rice between 10:00 p.m. and 5:09 a.m.

The combination of those facts wouldn't allow a reasonable trier of fact to find that the defendant knew or reasonably should have known that Mr. Rice was developing or suffering from psychogenic polydipsia, or that he was in imminent danger of dying from fatally over-hydrating himself. The strongest of the Estate's points is that a jury could find that Ms. Lambright failed to check on Mr. Rice during the time in which he died. The Estate says the jail had a policy of requiring hourly checks on inmates in administrative segregation, the shift log showed no contact between Ms. Lambright (the CMS nurse on duty) and Mr. Rice between 10:00 p.m. and 5:09 a.m., and that Ms. Lambright was within earshot of inmates who were yelling and kicking to get help for Mr. Rice. But the record contains nothing to show that as a CMS nurse Ms. Lambright was required to make hourly

checks, or that she knew or reasonably should have known that Mr. Rice needed immediate attention or was in imminent danger of serious injury or death from drinking too much water.

Dr. Gerald Shiener testified that "what really caused [Rice's] death was the fact that his medical care was neglected for several months," but he didn't elaborate on how psychogenic polydipsia would have been foreseeable to any of the CMS defendants. Finally, the only individual defendants involved in this motion were nurses, and nothing in this record would support equating what was foreseeable to doctors and what was foreseeable to a nurse or to CMS.

IV.

The way Nicholas Rice died is heartrending. But this record contains no evidence that would support a finding that his death from psychogenic polydipsia was reasonably foreseeable to the defendants and was a result of their acts or omissions. CMS and the nurses are entitled to judgment as a matter of law. The court GRANTS the CMS defendants' motion for summary judgment [Doc. No. 53].

SO ORDERED.

ENTERED:     November 12, 2013

/s/ Robert L. Miller, Jr.
Judge, United States District Court